**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

ANDREW PROKOS,

Plaintiff, Case No. 23-cv-04960 (MMG)

-against-

FULL STACK LLC and DOES 1–10,

Defendants.

-------------------------------------------------------x

**DEFENDANT FULL STACK LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND BILL OF COSTS**

## I. PRELIMINARY STATEMENT

Andrew Prokos recovered $33,750 at trial. He now demands $94,465 in attorney's fees — nearly three times his recovery — from a defendant whose defenses this Court held were substantial enough to require a jury trial. His motion should be denied.

The Copyright Act does not award fees as a matter of course. Section 505 commits the decision to the Court's discretion, and the Supreme Court has directed that the objective reasonableness of the losing party's position be given "substantial weight." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 136 S. Ct. 1979, 195 L. Ed. 2d 368 (2016). By that measure, Prokos's motion collapses on the record he himself built. This Court denied both sides' cross-motions for summary judgment, holding that "[s]ummary judgment for either party is inappropriate in this case because there are multiple disputes of material fact." Dkt. No. 60 at 2. The Court found the evidence "less than clear" on whether Full Stack or ArtSpace placed the newsletters on Milled.com, held that "the plain text of Prokos and ArtSpace's agreement does not

resolve" the license question, and ruled that "the factual record is insufficient for the Court to determine whether Full Stack is entitled to a fair use defense as a matter of law." *Id.*, at 3.

Those are the very defenses Prokos now brands "frivolous" and "objectively unreasonable." A defense that defeats summary judgment and must be resolved by a jury is, by definition, not frivolous or objectively unreasonable. *See Overseas Direct Imp. Co. v. Fam. Dollar Stores Inc.*, No. 10 CIV. 4919 JGK, 2013 WL 5988937 (S.D.N.Y. Nov. 12, 2013). And indeed, Prokos "cites no precedent for the proposition that [Full Stack's] claims may be found objectively unreasonable despite having survived summary judgement." *Id.,* at *2. Rather, Prokos's motion asks the Court to disavow its own summary judgment ruling. It should decline.

Prokos's remaining *Fogerty* arguments fare no better. His motivation as a serial copyright plaintiff — this action is one of at least fifteen materially identical suits he has filed since 2018 in this district alone— is not the kind of motivation the Copyright Act rewards. Since the verdict he has demanded fees nearly three times his recovery while asserting further claims over photographs drawn from Full Stack's own trial exhibit. There is nothing to deter and no injury to compensate. Full Stack operated a lawful newsletter search engine, displayed low-resolution thumbnails bearing ArtSpace's copyright notice, and Prokos could not identify a single lost sale or quantify a dollar of harm. A $94,465 fee award would not vindicate creative labor. Instead, it would bankroll a litigation machine.

Finally, it was Prokos, not Full Stack, who forced this case to trial. Full Stack made a good-faith $15,000 Rule 68 offer of judgment on November 6, 2024 (Dkt. No. 49), which Prokos rejected before litigating for another year and a half to better it by a mere $18,750 — running up the overwhelming bulk of his $94,465 demand along the way. Those post-offer fees are grossly disproportionate to that marginal gain. Timing also matters. No judgment has been entered. Full

Stack's post-trial motion will present a pure question of law that, if granted, reduces the award to one statutory award per registration. The Court should not measure a fee against a damages figure that is not yet final. The Court should deny the motion in its entirety. Full Stack also opposes Prokos's separately filed bill of costs, Dkt. No. 90, as set forth in Point 6 below.

## II. STATEMENT OF RELEVANT FACTS

### A. The Defenses That Survived Summary Judgment

Full Stack operates Milled.com, a search engine that indexes publicly available email newsletters and displays them as archived. Dkt. No. 56-2 at ¶ 1. Prokos contracted with non-party ArtSpace LLC to market and sell his photographs; ArtSpace distributed email newsletters containing thumbnail images of the works, and those newsletters were accessible on Milled.com. Id., at ¶¶ 8 and 10. Throughout the litigation, Full Stack maintained three defenses: (1) it engaged in no "volitional conduct" because ArtSpace, not Full Stack, placed the newsletters on the platform; (Dkt. No. 56 at 6 & 7; Dkt. No. 56-2 at ¶ 8; (2) Prokos's own agreement with ArtSpace authorized display of the works, granting ArtSpace the non-exclusive right to reproduce and promote the works "in any medium" (Dkt. No. 56 at 9); and (3) the display of low-resolution thumbnails was a transformative fair use that caused no market harm. *Id.*, at 18 & 19.

Full Stack did not advance these positions cynically. When it learned of the ArtSpace relationship, it impleaded ArtSpace, obtained the Prokos–Artspace agreement, and dismissed the third-party claim on the strength of that evidence. Dkt. No. 56 at 5. The record contained an August 2016 email from an ArtSpace representative asking to be "a participating brand" on Milled.com — direct evidence supporting Full Stack's account of how the newsletters arrived on the platform. Id., at 17; Dkt. No. 56-2 at ¶ 8.

This Court denied both cross-motions for summary judgment. It expressly held that the license question was unresolved on the contract's text, that the evidence on volitional conduct was "less than clear," and that the fair use question "must be presented to a jury." Dkt. No. 60 at 3.

**B. Prokos's Damages Record**

Prokos could not identify a single lost sale, testifying that any such answer would be "speculation." Dkt. No. 56-2 at ¶ 5. He could not articulate any damages he suffered or quantify a dollar amount, answering "I cannot." Dkt. No. 56 at 20. The thumbnails displayed on Milled.com bore ArtSpace's copyright notice, not Prokos's. Dkt. No. 56-2 at ¶ 24. The jury awarded $33,750 in statutory damages — $2,250 per photograph.

**C. The Fee Demand**

Prokos seeks $94,465: $82,772.50 for lead counsel (158.7 hours), $6,792.50 for an associate (20.9 hours), and $4,900 for paralegals (39.2 hours). Dkt. No. 86 at 11. No judgment has yet been entered.

## III. ARGUMENT

**1. Fees Under Section 505 Are Discretionary and Are Not Awarded as a Matter of Course.**

Section 505 provides only that a court "may" award "a reasonable attorney's fee to the prevailing party as part of the costs." *17 U.S.C.A. § 505*. Costs and attorney fees for prevailing parties under § 505 are not automatic; they are "a matter for a district court's equitable discretion." *Moran v. Designet Int'l*, No. 05-CV-459S, 2011 WL 5978240 *2 (W.D.N.Y. Nov. 27, 2011). The Supreme Court has imposed two limits on that discretion that defeat Prokos's premise. First, a court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment. *Kirtsaeng,* 579 U.S. at 202. Second, prevailing plaintiffs

and prevailing defendants must be treated alike, so that meritorious copyright defenses are "encouraged to litigate" to the same extent as meritorious claims. *Id.*

Within that framework, courts weigh the nonexclusive *Fogerty* factors: "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010). Of these, "objective reasonableness …should be given substantial weight," because "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir. 2014). That principle protects a *losing* party with a reasonable position — here, Full Stack. Prokos's contention that all factors favor him ignores both the standard and the record.

**2. Full Stack's Defenses Were Objectively Reasonable — This Court's Denial of Summary Judgment Proves It.**

The dispositive point is straightforward. Objective reasonableness carries "substantial weight" (*Zalewski,* 754 F.3d at 107) and Full Stack's defenses were objectively reasonable because this Court held they raised genuine disputes of material fact that a jury had to resolve. Dkt. No. 60 at 2 & 3.

"Objective unreasonableness" is generally used to describe claims that have "no legal or factual support" — a standard Prokos himself recites. Dkt. No. 86 at 6. Full Stack's defenses had ample support. The Court found the license defense unresolved on the contract's plain text, the volitional-conduct evidence "less than clear," and the fair use question dependent on facts that "must be presented to a jury." Dkt. No. 60 at 3. A position that survives summary judgment and warrants trial cannot be one that "lacks an arguable basis in either law or in fact," as Prokos asserts. Dkt. No. 86 at 5.

The Second Circuit's decision in *Bryant* is directly on point. There, the court affirmed the *denial* of fees because the losing party's "defenses were not objectively unreasonable" and it "prevailed on several important issues." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010). So too here: the Court denied Prokos's motion as to each of these defenses, holding they raised triable issues and the infringement was found to be non-willful. And in *Zalewski*, the Second Circuit *vacated* a fee award, holding that where the losing party's position "had a reasonable basis in law and fact, imposing fees is not faithful to the purposes of the Copyright Act." *Zalewski,* 754 F.3d at 108.

This District's decision in *Narrative Ark* is closer still. After resolving cross-motions for summary judgment, the court declined to award § 505 fees to any party because the losing positions were "neither frivolous nor objectively unreasonable" — the case turned on a "complex" question that "may well have" come out the other way. *Narrative Ark Ent. LLC v. Archie Comic Publications, Inc.*, No. 16 CV 6109 (VB), 2019 WL 5157400 (S.D.N.Y. Oct. 15, 2019). That is precisely this case: the Court denied both cross-motions because the outcome turned on unresolved, genuinely disputed facts. Dkt. No. 60 at 2 & 3.

Full Stack acknowledges that surviving summary judgment does not *mechanically* establish reasonableness in every case; a district court assesses reasonableness on the merits. *See Vargas v. Pfizer, Inc.*, 352 F. App'x 460 (2d Cir. 2009). But *Vargas* affirmed a reasonableness finding the district court had actually made after weighing the record; it did not license the opposite move Prokos attempts — declaring "objectively unreasonable" the very defenses this Court found substantial enough to try.

Additionally, "lack of success on the merits, without more, does not establish that the non-prevailing party's position was objectively unreasonable…claims that survive summary judgment

are *unlikely to be objectively unreasonable*." *Overseas Direct Imp. Co. v. Fam. Dollar Stores Inc.*, No. 10 CIV. 4919 JGK, 2013 WL 5988937 * 2 (S.D.N.Y. Nov. 12, 2013) (emphasis added). (*See also Opoku v. Cnty. of Suffolk*, 123 F. Supp. 3d 404 (E.D.N.Y. 2015) stating that a claim "cannot properly be deemed groundless … where [a party] has made a sufficient evidentiary showing to forestall summary judgment..." And *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 612 F. Supp. 3d 115 (E.D.N.Y. 2020) treating the fact that a claim "survived multiple rounds of dispositive motion practice" as evidence it was not frivolous or objectively unreasonable)).

On this record, the reasonableness of Full Stack's positions is not a contested inference; it is the necessary predicate of the Court's own summary judgment ruling.

### 3. The Remaining *Fogerty* Factors Do Not Support a Fee Award.

#### A. Frivolousness

For the reasons in Point 2, none of Full Stack's defenses were frivolous. Prokos's own memorandum concedes that "[e]xceptional circumstances are not a prerequisite" and that fees may be denied even where a factor is neutral. Dkt. No. 86 at 4. Full Stack's good faith is confirmed by its conduct: it impleaded ArtSpace, examined the governing agreement, and litigated defenses the Court sent to a jury. Dkt. No. 56 at 5; Dkt. No. 60 at 3. Prokos's assertion that Full Stack "presented no credible evidence" (Dkt. No. 86 at 6) cannot be squared with a summary judgment record the Court found too close to resolve. Nor does the DMCA claim assist Prokos. Prokos voluntarily dismissed that claim, and Full Stack's counsel executed the stipulation of dismissal within weeks of receiving it — a reasonable interval to evaluate a voluntary dismissal tendered by opposing counsel. In any event, the claim was billed at $0 and dismissed by Prokos; it bears nothing on whether Full Stack's defenses were objectively unreasonable.

**B. Motivation**

Prokos frames his own motivation as protecting his art. But the relevant inquiry also encompasses whether a fee award would reward the type of litigation the Copyright Act is meant to encourage. *Matthew Bender & Co.,* 240 F.3d at 121–22. Prokos is a serial filer: his complaint here is "the same, or substantially the same as the other 15 complaints filed by the plaintiff in this Court." Dkt. No. 56 at 2. He conducted no investigation of Full Stack before suing. Dkt. No. 56-2 at ¶ 18. A photographer who files near-identical suits and then seeks fees nearly triple his recovery is pursuing a fee-driven litigation model — not vindicating a considered infringement claim. Rewarding that model does not serve the Act's purposes.

Prokos's conduct since trial bears on motivation as well. Rather than accept the jury's valuation, he demands $94,465 in fees, nearly three times the award, while his counsel has asserted further infringement claims against Full Stack over photographs identified from a document Full Stack produced as a trial exhibit in this case. Four of the newsletters counsel identifies are newsletters Prokos himself designated and offered as Plaintiff's Exhibits 22 through 25. Full Stack takes no position here on the merits of any such claim. It observes only that this is the sort of "overaggressive assertion of copyright claims" the Supreme Court has identified as a proper subject of fee shifting, and not a basis for shifting fees to Full Stack. *Kirtsaeng,* 579 U.S. at 209.

**C. Compensation and Deterrence**

There is nothing here to deter. Full Stack runs a lawful newsletter search engine with a copyright disclaimer and DMCA takedown procedure (Dkt. No. 56-2 at ¶¶ 1-5), displayed only low-resolution thumbnails bearing ArtSpace's copyright notice (*Id.*, at ¶ 13), and reasonably believed ArtSpace was authorized to promote the works. *Id.*, at ¶ 14. Deterrence weighs in favor of fees only against culpable conduct; it has no purchase against a defendant whose defenses required a trial. Additionally, the jury in this case found Full Stack's infringement to be *non-willful*.

As for compensation, Prokos could not identify a single lost sale or quantify any harm (*Id.*, at ¶¶ 21, 22, 28, 29) — the injury a fee award is meant to make whole is absent.

Prokos's contention that a *smaller* damages award makes fees *more* appropriate is an overbroad argument that inverts the standard. The case that Prokos cites for this proposition (which is a seventh circuit decision) also importantly notes that a smaller damage award may make a stronger case for an award of attorney's fees "provided there is a real, *especially willful*, infringement." *Gonzales v. Transfer Technologies, Inc*., 301 F.3d 608, 610 (7th Cir. 2002). Whereby, *Gonzales* is inapposite for two important reasons. First, the jury in this matter, in contrast to the defendant in *Gonzales*, found Full Stack's infringement *non-willful*. Second, Gonzales was awarded a mere $3,000 in damages while Prokos was awarded *over ten times* that amount. The *Gonzales* Court itself drew this line when it reasoned that "[T]he infringement was willful; and willful infringements involving small amounts of money cannot be adequately deterred… without an award of attorney's fees." *Gonzales*, 301 F.3d at 609-610. This case presents neither scenario. Here, the infringement was non-willful and the jury's award of over $33,000 cannot reasonably be considered a "small amount of money." In fact, the district court entertained this precise argument in *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31 (S.D.N.Y. 2015), where the court considered that "the Beastie Boys paid their counsel more in fees (approximately $2.4 million) than was awarded by the jury in total ($1.7 million) or on the Copyright Act claims alone ($1.2 million)." *Id.,* at 44. This court proceeded to acknowledge that, "[t]o be sure, in assessing whether the Copyright Act's compensation goal is implicated here, the Court must determine the minimum amount reasonably necessary to effectively litigate these claims, not the amount actually spent in this case." *Id.*

Moreover, the amount of attorney's fees Prokos incurred is at least partially a product of his own aggressive litigation strategy. Prokos rejected a reasonable settlement offer made nearly two years prior to the trial and chose to seek summary judgement as a plaintiff; a strategic choice that ran up substantial fees. To this point, counsel's billing records (Dkt. No. 85-2 at pp. 13-20) indicate that Prokos was billed no less than $16,000 for his motion for summary judgement, including a single billing entry dated November 8, 2024, for $3,150.

Finally, a $94,465 fee demand on a $33,750 recovery, resting on damages Prokos admitted he could not quantify, reflects a profound mismatch between effort and success.

**4. Prokos's Rejected Rule 68 Offer Weighs Heavily Against Any Award of His Post-Offer Fees.**

Full Stack did not force this case to trial — Prokos did. On November 6, 2024, Full Stack served a Rule 68 offer of judgment in the amount of $15,000. Dkt. No. 49. Prokos rejected it and then litigated for more than a year and a half before the case reached a jury. His memorandum never discloses the offer amount, characterizing it only as "far less than the jury's award," (Dkt. No. 86 at 7) and — just as tellingly — never tells the Court how much of the claimed $94,465 he incurred before that offer versus after it. That silence matters, because the reasonableness of a fee is measured against the degree of success it purchased. Full Stack does not contend that the offer mechanically bars a fee recovery. The verdict exceeded it. However, the offer bears on the Court's discretion, on whose litigation choices generated the fees now claimed, and on the degree of success those fees purchased.

Prokos ultimately recovered $33,750 — bettering Full Stack's early offer by only $18,750, and only after eighteen-plus months of summary-judgment briefing, motions in limine, and trial. The billing records confirm the imbalance: the overwhelming majority of Prokos's billed hours postdate the November 6, 2024 offer, encompassing his summary-judgment opposition and reply,

the 2026 motion-in-limine practice, and the entire trial. Dkt. No. 85-2. The great majority of the $94,465 he now demands was thus spent chasing that incremental $18,750. More precisely, Fees so wildly disproportionate to the marginal benefit gained over a rejected early offer are not reasonable and should not be shifted to Full Stack.

Full Stack's early offer also refutes Prokos's central narrative. He insists Full Stack's settlement positions were unreasonable and that it forced him to trial. Dkt. No. 86 at 2 & 7. The opposite is true: Prokos's opening settlement demand, communicated in November 2023 at the very outset of the case, was $120,000 — an amount roughly *3.5 times* higher than the jury's ultimate award. Under such circumstances, Full Stack's rejection of this offer cannot possibly be construed as "unreasonable." Full Stack, on the other hand, tendered a concrete, good-faith offer to settle for $15,000 at the summary-judgment stage, and it was Prokos who rejected it and pressed on for another eighteen months. A defendant's reasonable effort to resolve a case short of trial weighs against, not for, a fee award to the plaintiff who spurned it. *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010). At a minimum, the Court cannot gauge the reasonableness of Prokos's post-offer effort while he conceals the pre- and post-offer division of his own fees; the burden of that omission falls on him.

**5. If the Court Reaches the Amount, the Request Is Unreasonable and Must Be Substantially Reduced.**

Should the Court reach the amount — it need not, for the reasons above — the request is excessive. "[T]he most critical factor" in a reasonable-fee determination "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424 436 (1983). A $94,465 demand to recover $33,750 in statutory damages, on a record devoid of any proven actual harm reflects effort disproportionate to result. At a minimum, any award must exclude all post-offer time under Point 4, and must be

reduced further to reflect Prokos's limited success. Additionally, the petition suffers from several independent defects that require substantial reduction.

First, the petition bills clerical and secretarial work that is not compensable at any rate. Time entries throughout Exhibit A reflect purely clerical tasks: Bates stamping and redacting documents, scanning exhibits, converting files between formats, downloading and renaming files, printing and assembling binders, and manually compiling tables of contents and authorities. *See, e.g.,* Dkt. No. 85-2 (entries of 6/13/2023, 3/19/2024, 6/18/2024, 10/29/2024, 10/31/2024, 11/03/2024, 11/05/2024, 11/07/2024, 11/09/2024, 11/12/2024, 11/21/2024, 12/12/2024, 6/02/2026, 6/04/2026, 6/10/2026, 6/15/2026, and 6/16/2026). Such work is not compensable regardless of who performed it, because the task itself is clerical, and clerical and secretarial tasks are considered part of a firm's overhead and are not to be included as part of an award for costs and fees. *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357 (S.D.N.Y. 2018). *See also Deferio v. City of Syracuse*, 2018 WL 3069200, at *6 (N.D.N.Y. June 21, 2018) ("[C]lerical and secretarial services are part of overhead and are not generally charged to clients."); *Siegel v. Bloomberg L.P.*, 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) ("[W]ith respect to tasks that are 'purely clerical,' such as downloading, scanning, or copying documents and organizing files, such work is generally not compensable, whether performed by an attorney or a paralegal."); *Kottwitz v. Colvin*, 114 F.Supp.3d 145, 151 (S.D.N.Y. 2015) ("[P]urely clerical or secretarial tasks should not be billed under fee shifting statutes regardless of who performs them.") (internal quotation marks and citation omitted).

By Full Stack's count these entries total 33.4 paralegal hours and $4,175.00. Counsel also billed 0.5 hours of his own time at $525 to assemble binders for the Court. (Exhibit A - entry of 12/12/2024). The clerical total is $4,437.50, and it must be excluded in full.

Second, the petition's largest entries are block-billed, lumping numerous discrete tasks under a single, undifferentiated time figure that cannot be tested for reasonableness. The entire trial week is recorded in this manner — single entries of 10.8, 8.6, 7.6, 6.3, and 6.2 hours, each combining conferences, drafting, examinations, and filings — as are the principal summary-judgment entries. Dkt. No. 85-2 (entries of 6/22/2026 through 6/25/2026; 11/08/2024; 11/22/2024).

The second circuit has long recognized the authority of district courts to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application, with no item-by-item accounting of the hours disallowed required. *Green v. City of New York*, 403 F. App'x 626 (2d Cir. 2010). Applying that authority to block billing specifically, the court in *Green* affirmed a 15% across-the-board reduction where the district court found that the obfuscation inherent in block billing frequently renders it impossible to determine the reasonableness of specific charges aggregated within the block billing. *Green,* 403 F. App'x at 630.

District courts describe the percentage reduction as the standard remedy for block billing. In *Division 1181 Amalgamated Transit Union v. D & A Bus Co.*, the court applied a 10% across-the-board reduction and collected authority for the proposition that it is common practice in the second circuit to reduce the fee award by an across-the-board percentage, citing decisions imposing 25%, 30%, 33%, and 40% reductions for block billing and vague entries. *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund,* 270 F. Supp. 3d at 627. The court explained that the prevalence of these types of entries significantly impedes a court's ability to assess whether the time expended on any given task was reasonable, and that courts apply percentage cuts where there is a substantial amount of block billing in a fee request. *Id.*

More recently, in *Prime Contractors Inc. v. APS Contractors Inc.*, the court recommended a 25% across-the-board reduction for block billing and excessive hours, again quoting that it is common practice in the second circuit to reduce the fee award by an across-the-board percentage and collecting multiple decisions imposing 25% reductions on that basis. *Prime Contractors Inc. v. APS Contractors Inc*., 786 F. Supp. 3d 554 (E.D.N.Y. 2025).

A conservative reduction of the block-billed hours is warranted here.

Third, the supporting declaration's account of the records is inaccurate, warranting careful scrutiny of the petition as a whole. Counsel's declaration states that the time records exclude time spent on the voluntarily dismissed DMCA claim. *Steger Decl.* ¶ *2.* The records do not exclude that time; they log it and rate it at zero. *See* Dkt. No. 85-2 (entries of 9/19/2024, 10/06/2024, 10/08/2024, 10/16/2024, 10/17/2024, and 10/30/2024). The arithmetic proves the point. Exhibit A reports a total of 220.00 hours. The hours claimed in the memorandum total 218.8. Dkt. No. 86 at 11. The 1.2-hour difference is precisely the six DMCA entries carried at a zero rate.

Two further discrepancies appear on the face of the papers. Exhibit A totals $94,457.50. The declaration and the memorandum each swear to $94,465.00. *Steger Decl.* ¶ *8;* Dkt. No. 86 at 11. The $7.50 difference arises because the fee table multiplies 39.2 paralegal hours by a flat $125 rate, while the 8/02/2022 entry was in fact billed at $110. The sworn total is therefore not derived from the records it purports to summarize. Separately, the declaration states that Ms. Abner left the firm in October 2024, *Steger Decl.* ¶ *5*, yet Exhibit A contains a 7/15/2025 entry for a conference with Ms. Abner, billed at $525. Dkt. No. 85-2. No single item here is large in dollars, but together they show that the petition has not been reconciled to the underlying records and the burden of submitting reliable documentation rests on the applicant.

Fourth, the hourly rate claimed for lead counsel exceeds what his own submission supports. Counsel seeks $500 per hour through June 2024 and $525 per hour thereafter. The only two courts that have set his rate set it at $485, in 2020 and again in 2022, and both were actions brought by this same plaintiff. *Steger Decl.* ¶ *4*. Counsel identifies no client who has in fact paid $525 in this or any other matter. A rate twice approved by federal courts in this Circuit, on this plaintiff's own cases, is the better measure of what a paying client would be willing to pay, and any award should be recalculated at $485.

Fifth, the petition includes time that predates this action by as much as a year. The earliest entries run from June 2022 through May 2023 and consist of reviewing a possible claim, drafting and revising demand letters, and locating Full Stack's registered agent. Dkt. No. 85-2. The complaint was not filed until June 14, 2023. Those entries total 2.8 hours and $980.00 and should be excluded.

Finally, Prokos requests leave to seek a further fee award should the parties engage in additional post-trial motions. Dkt. No. 86 at 12. That request should be denied. No judgment has yet been entered, Full Stack's post-trial motion will raise a legal question on which it preserved its objection at trial, and a party should not face an additional fee application for having presented a preserved issue to the Court.

**6. Prokos's Bill of Costs Should Be Disallowed or Reduced.**

Prokos separately seeks $1,631.30 in costs. Dkt. No. 90. Three categories should be disallowed, or at minimum held pending documentation.

First, the transcript charge of $1,134.10 includes a cost that was not necessarily incurred. That figure comprises counsel's half of the court ordered trial transcripts and one deposition transcript. Full Stack paid its own half of the trial transcript cost directly. As to the third trial day,

undersigned counsel forwarded her own copy of that transcript to Prokos's counsel for the express purpose of sparing him a separate charge. Prokos's counsel ordered his own copy notwithstanding, and now asks Full Stack to pay half of it. A cost incurred after the document was offered at no charge was not necessarily obtained for use in the case.

Second, the filing fee and service of process items are unsupported. No invoice, receipt, or reporter statement has been produced for any line item, and the submission is not accompanied by the affidavit this District requires setting out each cost claimed and the basis for it. *See* Local Rule 54.1(a). The form submitted also leaves the date of judgment blank, which is accurate, because no judgment has been entered.

Third, the photocopying charge of $35.20 does not identify what was copied, the number of pages, the rate per page, or why the copies were necessary rather than obtained for counsel's own convenience.

Full Stack reserves its objections should Prokos supplement his submission, and asks that any taxation of costs abide the entry of judgment and the resolution of Full Stack's post-trial motion.

## IV. CONCLUSION

Prokos asks the Court to declare frivolous and objectively unreasonable the same defenses it held were substantial enough to require a trial, on a fee demand nearly three times his recovery. That is not the vindication of creative labor the Copyright Act rewards. Full Stack respectfully requests that the Court deny Plaintiff's motion for attorney's fees in its entirety, disallow or reduce his bill of costs as set forth in Point 6, together with such other relief as the Court deems just and proper.

Dated: August 12, 2026

Respectfully submitted,

*Natalie Sulimani*

Natalie Sulimani, Esq.
150 Broadway Suite 1703
New York, NY 10038
Tel: (212) 863-9614
natalie@sulimanilawfirm.com
***Counsel for Defendant Full Stack, LLC.***